UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
RYAN O'DELL,                                            :
                                                        :
       Plaintiff,   : Civil Action No. 22-cv-4340
                                                        :
v.                                                      : **COMPLAINT FOR VIOLATIONS OF**
                                                        : **SECTIONS 14(a) AND 20(a) OF THE**
NIELSEN HOLDINGS PLC, JAMES A.                          : **SECURITIES EXCHANGE ACT OF**
ATTWOOD, JR., DAVID KENNY,                              : **1934**
THOMAS H. CASTRO, GUERRINO DE                           :
LUCA, KAREN M. HOGUET, JANICE                           : **JURY TRIAL DEMANDED**
MARINELLI MAZZA, JONATHAN                               :
MILLER, STEPHANIE PLAINES, NANCY                        :
TELLEM, and LAUREN ZALAZNICK,                           :
                                                        :
       Defendants.  :
---------------------------------------------------------  :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Nielsen Holdings plc ("Nielsen or the "Company") and the members Nielsen' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Nielsen by affiliates of Elliott Investment Management L.P. and Brookfield Business Partners L.P. ("the Consortium").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on May 19, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Neptune BidCo US Inc. ("Purchaser"), a wholly owned subsidiary of Neptune Intermediate Jersey Limited ("Parent"), will acquire the entire issued and to be issued share capital of Nielsen (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 28, 2022 (the "Merger Agreement"), each Nielsen stockholder will receive $28.00 in cash (the "Merger Consideration") for each Nielsen share owned. Purchaser and Parent are both affiliates of the Consortium.

3. As discussed below, Defendants have asked Nielsen' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Allen & Company LLC ("Allen & Company") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Nielsen' stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the New York Stock Exchange, headquartered in this District, and the Consortium and Merger Sub and other affiliates are headquartered in this District. Further, the closing of the Proposed Transaction will also occur in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Nielsen stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant James A. Attwood, Jr. has served as a member of the Board since 2006 and is the Chairman of the Board.

11. Individual Defendant David Kenny has served as a member of the Board since December 2018 and is the Company's Chief Executive Officer.

12. Individual Defendant Thomas H. Castro has served as a member of the Board since 2020.

13. Individual Defendant Gerrino De Luca has served as a member of the Board since September 2017.

14. Individual Defendant Karen M. Hoguet has served as a member of the Board since 2010.

15. Individual Defendant Janice Marinelli Mazza has served as a member of the Board since 2020.

16. Individual Defendant Jonathan Miller has served as a member of the Board since 2020.

17. Individual Defendant Stephanie Plaines has served as a member of the Board since 2021.

18. Individual Defendant Nancy Tellem has served as a member of the Board since 2019.

19. Individual Defendant Lauren Zalaznick has served as a member of the Board since 2016.

20. Defendant Nielsen is a public limited company formed under the laws of England and Wales and maintains a U.S. headquarters at 675 Avenue of the Americas, New York, NY 10010. The Company's stock trades on the New York Stock Exchange under the symbol "NLSN."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

23. Nielsen, together with its subsidiaries, operates as a measurement and data analytics company worldwide. The Company provides viewership and listening data, and analytics principally to media publishers and marketers, and advertising agencies for television, computer, mobile, CTV, digital, and listening platforms. It also offers television audience measurement services; digital audience measurement services; video advertising services; and independent measurement and consumer research primarily servicing radio, advertisers, and advertising agencies in the audio industry. In addition, it offers consumer behavioral and transactional data. Nielsen Holdings plc provides marketing solutions. The Company was founded in 1923 and is headquartered in New York, New York.

24. On March 29, 2022, the Company announced the Proposed Transaction:

> NEW YORK, March 29, 2022 /PRNewswire/ -- Nielsen Holdings plc (NYSE: NLSN) ("Nielsen") today announced that it has entered into a definitive agreement to be acquired by a private equity consortium ("Consortium") led by Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), and Brookfield Business Partners L.P. together with institutional partners (collectively "Brookfield") for $28 per share in an all-cash transaction valued at approximately $16 billion, including the assumption of debt.
>
> The Nielsen Board of Directors voted unanimously to support the acquisition proposal, which represents a 10% premium over the Consortium's previous proposal and a 60% premium over Nielsen's unaffected stock price as of March 11, 2022, the last trading day before market speculation regarding a potential transaction. The Board reached this determination following a comprehensive review of the proposal, with the assistance of its independent financial and legal advisors.
>
> "After a thorough assessment, the Board determined that this transaction represents an attractive outcome for our shareholders by providing a cash takeout at a substantial premium, while supporting

Nielsen's commitment to our clients, employees and stakeholders. The Consortium sees the full potential of Nielsen's leadership position in the media industry and the unique value we deliver for our clients worldwide," said James A. Attwood, Chairperson of Nielsen's Board of Directors.

"After months of deep market analysis, industry diligence and management reviews, we are firmly convinced that Nielsen will continue to be the gold standard for audience measurement as it executes on the Nielsen ONE roadmap," said Managing Partner Jesse Cohn and Senior Portfolio Manager Marc Steinberg on behalf of Evergreen and Elliott. "Having first invested in Nielsen nearly four years ago, we have a unique appreciation for the Company's ongoing relevance to the global, digital-first media ecosystem. Today's outcome represents a significant win for Nielsen's shareholders and for the business itself, as our multibillion-dollar investment will help Nielsen reinforce its transformation at this critical inflection point. We are pleased to partner with David and the existing management team to lead Nielsen after the transaction is completed."

"Nielsen is deeply embedded in the media ecosystem and a trusted service provider to its customers. As a private company, Nielsen will be even better positioned to deliver the best measures of consumers' rapidly changing behaviors across all channels and platforms," commented Dave Gregory, Managing Partner, Brookfield Business Partners. "We are pleased to invest in this iconic company and help lead the industry into the next generation of audience measurement."

The Consortium has secured fully committed debt and equity financing, including an approximately $5.7 billion equity commitment from the Consortium consisting of Evergreen and Brookfield. There are no financing conditions to the closing of the transaction.

The transaction is subject to approval by Nielsen shareholders, regulatory approvals, consultation with the works council and other customary closing conditions. The transaction will also be subject to UK court approval pursuant to a scheme of arrangement. Alternatively, pursuant to the agreement, the parties may elect instead to complete the transaction pursuant to an agreed-upon tender offer. If the closing conditions are met, the transaction is expected to close in the second half of 2022.

The Company no longer intends to commence share repurchases under the Board's previously approved authorization.

**"Go-Shop" Period**

The transaction agreement provides for a "go-shop" period, during which Nielsen – with the assistance of its financial advisors, J.P. Morgan and Allen & Company, and its legal advisors – will actively solicit, evaluate and potentially enter into negotiations with parties that offer alternative acquisition proposals. The go-shop period expires 45 days after Nielsen's entry into the transaction agreement. Following that period, Nielsen will be permitted to continue discussions and enter into or recommend a transaction with any person or group that submitted a qualifying proposal during the 45-day period, if the Board determines the proposal is superior to this transaction. A competing bidder who makes a superior proposal would bear a $102 million (1% percent of equity value) termination fee that is payable by Nielsen if Nielsen terminates the transaction agreement with the Consortium to accept such superior proposal.

**Advisors**

J.P. Morgan and Allen & Company LLC are acting as lead financial advisors to Nielsen. PJT Partners is also acting as an advisor to Nielsen. Wachtell, Lipton, Rosen & Katz, Clifford Chance LLP, DLA Piper, and Baker McKenzie are serving as legal advisors to Nielsen. Gibson, Dunn & Crutcher LLP and Herbert Smith Freehills LLP are serving as legal advisors to Evergreen and the Consortium, and Davis Polk & Wardwell LLP is acting as legal advisor to Brookfield. BofA Securities, Barclays, Credit Suisse, Mizuho Securities USA LLC, HSBC Securities (USA) Inc., and Citi are serving as financial advisors to Evergreen and Brookfield.

\* \* \*

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Nielsen' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Proxy Statement**

26. On May 19, 2022, Nielsen filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The

Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by Nielsen management and relied upon by J.P. Morgan and Allen & Company in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and J.P. Morgan and Allen & Company with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Nielsen management provided to the Board, J.P. Morgan and Allen & Company. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA (post-SBC) and Unlevered Free Cash Flow, but fails to provide a reconciliation of the non-GAAP metrics to their

8

most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. With respect to J.P. Morgan's *Publicly Trading Multiples* analysis, the Proxy Statement fails to disclose the financial metrics ad multiples for each company selected for the analysis.

33. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics ad multiples for each company selected for the analysis.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) line items used to calculate the Company's Unlevered Free Cash Flows; (ii) the range of terminal values of the Company at the end of fiscal year 2025; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 1.5% to 2.5%; (iv) the inputs and assumptions underlying the use of the discount rates of 8.5% to 9.5%; and (v) the Company's weighted average cost of capital and the inputs used for its calculation.

35. With respect to Allen & Company's *Selected Publicly Companies Analysis*, the Proxy Statement fails to disclose the financial metrics ad multiples for each company selected for the analysis.

36. With respect to Allen & Company's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics ad multiples for each company selected for the analysis.

37. With respect to Allen & Company's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) line items used to calculate the Company's Unlevered Free Cash Flows; (ii) the implied terminal values of the Company at the end of fiscal year 2025; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 1.5% to 2.5%;

(iv) the inputs and assumptions underlying the use of the discount rates of 8.25% to 9.25%; and

(v) the Company's weighted average cost of capital and the inputs used for its calculation.

38. With respect to Allen & Company's analysis of publicly available forward Wall Street research analysts' price targets for Nielsen ordinary shares, the Proxy Statement fails to disclose the analysts and their respective price targets.

39. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Nielsen within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Nielsen, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Nielsen, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Nielsen, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 26, 2022                            **MELWANI & CHAN LLP**

                                       By:  */s/ Gloria Kui Melwani*
                                                  Gloria Kui Melwani
                                                  1180 Avenue of the Americas, 8th Fl.
                                                  New York, NY 10036
                                                  Telephone: (212) 382-4620
                                                  Email: gloria@melwanichan.com

                                                  *Attorneys for Plaintiff*